



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANITA GELLISCH,

          **Plaintiff,**        **CIVIL ACTION NO. 10-CV-12185**

    vs.

                         **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**

_____/

## CORRECTED REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Plaintiff's Motion for Summary

Judgment (docket no. 11) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12)

be GRANTED and the instant Complaint dismissed.

\*\*\*

**II.**     **PROCEDURAL HISTORY:**

        Plaintiff filed an application for disability and Disability Insurance Benefits on February 2,

2005 alleging that she had been disabled since March 1, 2002 due to panic attacks, disk problems,

and fibromyalgia. (TR 44-46, 61-62, 269). The Social Security Administration denied benefits. (TR

35, 37-41). Administrative Law Judge Karen J. Goheen (ALJ) held a de novo hearing on November

7, 2007 and in a decision dated April 16, 2008 found that the claimant was not entitled to a period

of disability or Disability Insurance Benefits because she was not under a disability within the

meaning of the Social Security Act at any time through June 30, 2005, the date last insured[1].  (TR 21-22, 56).  The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review.  (TR 5-8).  The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.   TESTIMONY AND RECORD EVIDENCE

Plaintiff was 38 years old on the date of the hearing.  (TR 271).  Plaintiff has a high school education and vocational training as a medical transcriptionist.  (TR 272-73).   Plaintiff has past work as a medical transcriptionist for a podiatrist.  (TR 274).  She was able to work from home but had to go to the office three days a week to pick up and drop off work, which her friend or parents would sometimes do for her.  (TR 274).  Plaintiff testified that she was let go from the position because they needed her in the office sometimes.  (TR 275).

Plaintiff described a stabbing gripping pain or spasms in her lower back, upper thighs and tailbone.  (TR 281).  Plaintiff testified that she can stand for ten minutes without holding onto anything and when she sits she has to change positions.  (TR 282).  Plaintiff testified that she cannot really type because she cannot feel her fingers.  (TR 284).  Plaintiff testified that the heaviest weight she can lift is about twenty pounds.  (TR 289).  Plaintiff testified that she has had panic attacks since she was in tenth grade and they typically do not happen at home, but only when she leaves.  (TR 284-85).   Plaintiff has panic attacks in elevators and on the freeway.  (TR 285).

At the time of the hearing Plaintiff was taking medications Vicodin, Robaxin and Xanax with

---

[1] The claimant must show that she was entitled to benefits on or before the date on which insurance coverage lapsed, the "date last insured." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing 42 U.S.C. § 423).

aspirin as needed. (TR 276). Plaintiff takes Xanax 0.5 mg three times a day and Vicodin EP 10 mgs eight per day. (TR 282-83). Plaintiff testified that the Xanax helped but that she was "very shaky" being in the hearing room with no windows. (TR 277). She testified that Vicodin helps the pain in her legs and tail bone, but it does not help her back pain. (TR 277). Plaintiff testified that the Xanax and the Vicodin make her tired. (TR 277).

The ALJ pointed out that one of the doctors (Louis Callazo, M.D.) had listed Plaintiff's diagnosis as "failed back surgery" and Plaintiff confirmed that she had never had back surgery, but had undergone epidural steroid injections in her lower back sometime between 2000 and 2003, until she could no longer afford her insurance. (TR 214, 278-79). Plaintiff testified that Dr. Ronald Meyers diagnosed her with fibromyalgia but she has not been to a rheumatologist or an endocrinologist despite having been referred to both. (TR 279). Plaintiff testified that she has not treated with a mental health professional since she was twenty-four years old. (TR 279).

Plaintiff testified that she is six feet tall and weighs approximately 220 pounds, having gained about 80 pounds since her impairments worsened. (TR 271). Plaintiff testified that she spends the majority of her day in bed. Plaintiff testified that she reads and does a lot of her reading online. (TR 273). She sometimes makes dinner and sometimes goes to the grocery store alone. (TR 85, 285-86). Plaintiff is able to perform personal care and grooming tasks without assistance. (TR 287). Plaintiff lives with her teen-aged son in a one story house with a basement. (TR 272). Plaintiff testified that she drives but she avoids the freeways and drives on side streets to attend her doctors appointments. (TR 274, 287).

Plaintiff reported that she can prepare simple meals but cannot do anything that requires her to stand longer than that. (TR 84). Plaintiff testified that due to her back pain she can do little tasks

3

for small amounts of time, for example, washing dishes for five minutes, then resting in bed for fifteen minutes but cannot engage in activities for a long period of time. (TR 280-81). Plaintiff testified that her son or mother help her with tasks that involve bending over, like vacuuming or washing the floor. (TR 277). Plaintiff testified that she feeds her dog and lets him go outside. (TR 83, 290).

The Vocational Expert (VE) testified that Plaintiff's past work as a transcriptionist and office secretary was skilled and sedentary in exertion. (TR 292). The ALJ asked the VE to consider an individual of Plaintiff's age, education and experience who is able to lift and carry up to twenty pounds occasionally and ten pounds frequently, needs a sit/stand option at will, must avoid pushing and pulling with both upper and lower extremities, needs to avoid postural activities especially bending at the waist to the floor and needs work that primarily includes gross manipulation due to some numbness of the fingertips, and does not require working with the public or driving. (TR 293).

The VE testified that such an individual could not perform Plaintiff's past work but could perform light unskilled work with a sit/stand option. The jobs would include packaging, sorting, inspection and assembly jobs at the light exertional level (approximately 8,000 jobs in the Metropolitan area and 14,000 in the state of Michigan). The VE testified that an individual further limited to simple repetitive tasks due to difficulties with detailed instructions or maintaining attention and concentration for extended periods of time could still perform these jobs. (TR 294). The VE testified that the need to avoid environmental hazards, including the need to work on the ground floor of a building, would eliminate approximately twenty-five percent of the jobs. (TR 294).

The VE testified that if Plaintiff's testimony were credible, her impairments supported by substantial medical evidence and she had the limitations she described, there would be no jobs she

4

could perform due to the frequency and severity of her panic attacks, the back, neck and leg pain, the need to recline or be in bed during the day and the numbness in her fingers. (TR 295). The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT) except that the DOT does not specifically define work with a sit/stand option, to which the VE testified based on his background and experience. (TR 295).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through June 30, 2005, had not engaged in substantial gainful activity at any time relevant to the decision, alleged disability as of March 1, 2002, and suffers from anxiety disorders, ulnar neuropathy and cervical radiculopathy, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 15-17). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work further limited to jobs in which Plaintiff can avoid pushing or pulling with the upper and lower extremities, postural activities especially those involving bending at the waist to the floor, working in close proximity to unprotected heights, dangerous machinery, concentrated chemicals, temperature extremes and excess humidity, working with the public and driving. (TR 17). Plaintiff is further limited to jobs which allow a sit/stand option at will, involve primarily gross manipulation (due to finger numbness) and which are limited to simple repetitive tasks due to difficulties with detailed instructions and maintaining attention and concentration for extended periods of time. (TR 17). The ALJ found that although Plaintiff is not able to perform her past relevant work, she is able to perform jobs existing in significant numbers in the national economy and therefore she is not suffering from a disability under the Social Security Act. (TR 20).

5

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step

6

sequential analysis set forth in 20 C.F.R. section 404.1520(a)-(g). The Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, the ALJ did not properly weigh a treating physician's opinion and RFC and that the ALJ mischaracterized the VE's testimony.

### B.    Discussion and Analysis

The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of light work. The medical evidence as a whole did not provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her impairments, including anxiety, medications or pain.

As far back as 1999 Plaintiff's treatment providers reported that her anxiety and panic attacks were "controlled" with Xanax. (TR 174-76). In April 2000 Plaintiff was prescribed Naprosyn and Vicodin for an ankle strain. (TR 171). Treatment notes show that Plaintiff complained of neck and back pain as early as 2001 and was prescribed Vicodin. (TR 160-62).

Treatment notes from Ronald Lee Meyers, D.O., show that on February 15, 2002 Plaintiff complained that her back was "out of alignment" and causing back and neck pain and stiffness. (TR 158). Plaintiff requested refills of Vicodin and Xanax. (TR 158). The doctor described Plaintiff's Xanax as being used for anxiety and "mild panic disorder." (TR 158). On examination Plaintiff had no significant areas of point tenderness and some tissue texture abnormalities in the paravertebral musculature. Range of motion was slightly diminished but approximately full range of motion was achieved following treatment by the physician. (TR 158). Plaintiff continued to report chronic low back pain but straight leg raising remained negative. (TR 156). In 2002 Plaintiff also complained of right heel pain. (TR 154-55). An August 28, 2002 joint x-ray of the right heel was normal. (TR

7

127). The records show that in 2002 and 2003 Plaintiff was primarily prescribed Xanax, Darvocet and Vicodin for back pain and anxiety. (TR149-58).

In November 2003 Plaintiff complained of numbness in the right hand and continued back pain. (TR 150). A November 11, 2003 x-ray of the cervical spine was normal. (TR 126). A December 2003 x-ray of the lumbar spine and pelvis showed "no significant radiographic abnormality of the lumbar spine or pelvis." (TR 128). A December 2003 EMG revealed findings that "most likely represent a right C6 radiculopathy" and were "suggestive of an ulnar neuropathy at the right elbow." (TR 152). Following further reports of pain to Kenneth Meyers, D.O., in 2004, a March 16, 2004 MRI of the lumbar spine revealed "some disc bulge at L5-S1, and to a certain extent at L4-5 and L3-4" with no spinal stenosis. (TR 138).

Examination notes from February and April 2005 show that while Plaintiff was following up on chronic conditions, a right earache and review and refill of medication, she had no additional complaints or concerns and was noted to be "clinically stable and in no acute distress." (TR 140-41, 143). Extremities were grossly unremarkable. Plaintiff's Xanax and Vicodin were renewed. (TR 140-41). In June 2005 Dr. R. Meyers declined to increase Plaintiff's Vicodin per her request and her self-report that she needed to take more due to her myositis-related pain. (TR 213). On July 28, 2005, after Plaintiff's date last insured, Dr. R. Meyers reported Plaintiff's history as including "herniated cervical disc with radicular pain bilateral arms." (TR 211, 212). Treatment providers' records throughout 2005 note that Xanax was effective in controlling and stabilizing Plaintiff's anxiety disorder. (TR 140, 207-13).

Plaintiff argues that the ALJ did not give proper weight to Dr. Luis Collazo's 2007 Physical Residual Functional Capacity Assessment and Medical Examination Report. (Docket no. 11 p.9 of

20; TR 222-32).  Plaintiff argues that these documents support a finding of disability and the ALJ erred in failing to adopt Dr. Callazo's opinion.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. However, dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e).

The ALJ properly explained the weight given to Dr. Callazo's opinions.  On October 12, 2007 Dr. Callazo opined that Plaintiff could lift less than ten pounds, stand and/or walk less than two hours in an eight-hour workday and sit less than six hours in an eight-hour workday and was limited in pushing and/or pulling with the lower extremities, without identifying the evidence and facts on which the conclusions were based.  (TR 223).  Dr. Callazo opined that Plaintiff can never engage in postural activities and is limited in reaching in all directions and fine manipulation, without further explanation. (TR 224-25).

On November 5, 2007 Dr. Callazo completed a state agency Medical Needs form and Medical Examination Report and opined that Plaintiff suffers from ulnar neuropathy and lumbar disk herniation at multiple levels with radiculopathy and chronic body pain, and has diagnoses of COPD, fibromyalgia, generalized anxiety disorder and panic attacks.  (TR 230).  He opined that Plaintiff "cannot work" and has limitations expected to last more than 90 days.  (TR 230, 232).  He noted that Plaintiff is also limited in social interaction and suffers panic attacks, claustrophobia and

9

agoraphobia. (TR 230-31). He noted decreased sensation in the right hand at the 5th finger and generalized myalgia. (TR 231).

The ALJ specifically addressed Dr. Callazo's opinions. First, the ALJ pointed out that the severe restrictions set forth by Dr. Callazo would "appear to render the claimant disabled." (TR 19). The ALJ correctly noted that dispositive findings of disability are reserved to the Commissioner. The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e).

Next, the ALJ correctly noted that Dr. Callazo did not start treating Plaintiff until more than a year after her date last insured. (TR 19). There is no evidence that Dr. Callazo's opinions relate to Plaintiff's impairments and conditions during the insured period. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (evidence of a claimant's condition after the insurance period must be considered to the extent it is probative of the claimant's condition prior to expiration of the insured period).

The ALJ did not limit her analysis to these issues and found that the severity of Dr. Callazo's limitations is not supported by the medical evidence of record. (TR 19). The ALJ pointed out that Plaintiff's gait was normal and straight leg raising was negative during the relevant period. (TR 19). Jingna Shah, M.D., noted on June 3, 2005 that Plaintiff's gait was normal. (TR 183-84). At a physical consultative examination the same day, E. Montasir, M.D., reported that Plaintiff's stance and gait were unremarkable and she did not use an aid to ambulate. (TR 188). Her fine and gross dexterity were intact and Plaintiff had "good grip" in both hands. (TR 188). Examinations during the relevant period show little to no deficits in range of motion and negative straight leg raising, including in March and November 2003 and as late as March and April 2007 . (TR 150, 156, 153,

10

217-18).  The ALJ also pointed out that the complaints of numbness and tingling in the lower extremities did not begin until March 7, 2007, well after the date last insured, when Plaintiff complained of "numbness" when walking.   (TR 19, 218).  The ALJ properly explained why Dr. Callazo's opinions need not have been given controlling weight[2].

Contrary to Plaintiff's argument, the ALJ gave very specific reasons for discounting Plaintiff's testimony about the intensity, duration and limiting effects of her symptoms. (TR 18). The ALJ pointed out that objective medical evidence and examination notes provided "some" support of Plaintiff's upper extremity complaints but did not support the severity of Plaintiff's symptoms and limitations.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements.  *See id.*; SSR 96-7p.

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2).  In addition to

_____

[2] Although not raised in Plaintiff's brief it is worth noting that despite notes appearing in the record referring to a history or diagnosis of fibromyalgia, the ALJ pointed out the absence of evidence showing the presence of any of the acceptable criteria to support the fibromyalgia diagnosis, including tender points.  (TR 18).  The ALJ also pointed out that Plaintiff never followed up on a referral to a rheumatologist.  (TR 18, 279).

11

objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

As set forth above, the 2003 x-ray of Plaintiff's cervical spine showed no abnormalities and although an EMG resulted in findings consistent with radiculopathy and neuropathy, gross and fine dexterity remained intact with good grip and pinch strength. (TR 18, 152, 188, 238). The ALJ, however, did not limit her analysis to the objective medical evidence and properly considered the record in full. The ALJ pointed out that Plaintiff's physician consistently reported that medication "attenuated" Plaintiff's pain. (TR 19, 207-13). The ALJ considered Plaintiff's ability to perform her own bathing, grooming and hygiene tasks and grocery shop unaccompanied except when buying items that she cannot carry. (TR 17). Plaintiff is able to drive herself to medical appointments by avoiding the freeways. (TR 274, 287). Plaintiff was unable to describe the limits of her ability to sit and stated that it often depended on the chair, and sitting too long may result in discomfort later. (TR 18, 281-82). The record also shows that in January 2004 Plaintiff was able to travel to Florida, for which she cancelled her doctor's appointment because she would not be back in time. (TR 149). In April 2007, after Plaintiff's date last insured, Plaintiff requested stronger Xanax "for a plane ride" and the medications were noted to give "good pain control." (TR 217). The ALJ specifically pointed out that Plaintiff's ability to climb five flights of stairs to the hearing room was inconsistent with claims of debilitating lower back and leg pain, although the ALJ speculated that Plaintiff "presumably" climbed the stairs to avoid the elevator. (TR 18).

Plaintiff argues that the ALJ did not provide reasons for an "apparent rejection" of Plaintiff's testimony regarding her panic attacks. The ALJ specifically addressed Plaintiff's panic attacks by

12

noting that Plaintiff's treating physician consistently reported Plaintiff's anxiety to be "controlled" and "stable" with Xanax. (TR 19, 140, 207-13). The ALJ also considered Plaintiff's statements that her medication helps her condition. (TR 16, 277). Plaintiff has no history of psychiatric hospitalization or outpatient mental health treatment, other than prescription medication and monitoring, during the relevant period and Plaintiff alleges only past mental health treatment ending years before the alleged onset date. (TR 16). The ALJ pointed out that the record does not show that Plaintiff's psychiatric conditions have increased in severity prior to the alleged onset date when Plaintiff was able to work. (TR 16). Despite some testimony that panic attacks can occur at home, Plaintiff's testimony also shows that they primarily occur when she drives on the freeway or rides in an elevator. (TR 16, 284-85). Plaintiff maintains that she is able to drive on side streets. (TR 274, 287).

The ALJ stated that she has afforded Plaintiff "significant benefit of the doubt with regard to her testimony" and the ALJ's RFC shows that she found Plaintiff to suffer significant upper and lower extremity limitations and mental limitations. (TR 19). Despite giving Plaintiff the benefit of the doubt, the ALJ has concluded that Plaintiff's testimony as to severity is not fully credible. The ALJ properly considered all the evidence of record and gave specific reasons for discounting Plaintiff's testimony.

With respect to Plaintiff's mental limitations, the ALJ followed the technique set forth in 20 C.F.R. section 404.1520a to evaluate mental impairments and incorporated those findings into her written decision. *See* 20 C.F.R. § 404.1520a(e)(2). The ALJ found that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate

13

difficulties in the ability to maintain concentration, persistence and pace with no episodes of decompensation of extended duration. (TR 16).

Consultative medical evaluator Kokila Sheth, M.D., completed a Psychiatric Review Technique with Mental Residual Functional Capacity Assessment on June 23, 2005 and concluded that Plaintiff has general anxiety disorder with panic attacks. (TR 107-24). Dr. Sheth concluded that Plaintiff has moderate limitations in activities of daily living and moderate difficulties maintaining social functioning and maintaining concentration, persistence and pace with no episodes of decompensation. (TR 117). The doctor noted no mental activities in which Plaintiff was markedly limited and reported that Plaintiff has moderate limitations in only three areas: The ability to maintain attention and concentration for extended periods, the ability to accept instruction and respond appropriately to criticism and the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (TR 121-22). The doctor ultimately concluded that Plaintiff follows directions and retains the RFC to perform simple work on a sustained basis. (TR 123).

The ALJ's "B" criteria findings are consistent with Dr. Sheth's except for Dr. Sheth's finding of moderate difficulties in activities of daily living, which the ALJ explained in his findings. (TR 17). Dr. Jigna Shah performed a state agency consultative examination on June 3, 2005, also prior to the date last insured, and Dr. Shah's findings support the ALJ's finding of mild difficulties in activities of daily living. (TR 16-17, 183-85). Dr. Shah noted Plaintiff's report at the time that she was living by herself. She took her medication regularly, was able to perform light household chores, her hygiene and grooming were good and she was neatly dressed. (TR 16, 183-84).

14

The ALJ's RFC limits Plaintiff to simple repetitive tasks, consistent with Dr. Sheth's opinion. The ALJ's RFC also limits Plaintiff to jobs where she does not work with the public. This restriction is consistent with L. Imasa, M.D.'s December 5, 2007 consultative examination, which the ALJ noted was performed after the date last insured, and Dr. Imasa's conclusion that Plaintiff is not able to work with the public due to her panic attacks. (TR 237). The record does not contain more restrictive mental limitations than those set forth in the ALJ's RFC.

The ALJ's RFC contains physical limitations that are also supported by substantial evidence in the record. Plaintiff testified that she could lift no more than twenty pounds, consistent with the RFC. (TR 289). The ALJ's RFC precludes all postural activities, pushing and pulling with any extremity and limits work to gross manipulation only, crediting Plaintiff's allegations of numbness in the fingers. (TR 17). The ALJ's RFC is consistent with those physical abilities determined by the state agency consultative physical examiner E. Montasir, M.D. (TR 186-92). The ALJ's RFC is supported by substantial evidence in the record.

Plaintiff argues that the ALJ misconstrued the VE's testimony. Plaintiff's argument is based on the VE's response to the ALJ's inquiry that if all of Plaintiff's testimony were assumed to be fully credible, her impairments supported by substantial medical evidence and her limitations to be as she described them, such an individual would be precluded from work. Although the ALJ elicited this testimony from the VE by way of a hypothetical question, the ALJ is not obligated to adopt the circumstances set forth in all hypothetical questions. As set forth above, the ALJ did not find Plaintiff's testimony to be fully credible, and that finding was explained and supported by substantial evidence.

15

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which she finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC is supported by substantial evidence. The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations which the ALJ found supported by the record and credible and the VE's testimony is substantial evidence supporting the ALJ's finding that there are other jobs in the economy that Plaintiff can perform. The ALJ's decision at step five is based on substantial evidence.

The record contains additional evidence that was submitted to the Appeals Council following the date of the ALJ's decision. (TR 4, 240-65). Plaintiff has not raised this issue, nor otherwise shown that the evidence requires remand for consideration. In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. section 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'ty of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is

referred to as a "sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).

This additional evidence does not require remand.  Plaintiff has neither alleged nor shown good cause for the failure to produce this evidence prior to the ALJ's decision.  The Court has also reviewed the records for the limited purpose of considering a sentence six remand and finds that the records do not relate to the relevant period on or before the date of the ALJ's hearing decision and they do not illuminate Plaintiff's condition prior to the date last insured.  The records are not material.  *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

## VI.   CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'"  *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002).  The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise.  Plaintiff's Motion for Summary Judgment (docket no. 11) should be DENIED, Defendant's Motion for Summary Judgment (docket nos. 12) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing

objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 15, 2011          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 29, 2011

                               Case Manager

18